The Chicago, Santa Fe and California Railway Co.

*v.*

Mary Ashling, Admx.

*Filed at Ottawa October 11, 1895—Rehearing denied March 13, 1896.*

1. CORPORATIONS—*what amounts to a consolidation of corporations.* A consolidation, and not a mere purchase by one corporation of the property of another, is effected by a transfer of all the property, stock and franchises of the latter, under an arrangement by which the stock of the former is issued to the stockholders of the latter in exchange for their stock. (CRAIG, C. J., dissenting.)

2. SAME—*when company is estopped to deny consolidation.* A corporation which has, in effect, consolidated with another, is estopped to assert that the proceedings for consolidation were not in accordance with the terms of the statute, in an action against it to

recover the amount of a judgment against the other corporation on the ground that there was a consolidation.

3. SAME—*whether consolidation works dissolution of original companies.* The general rule that the consolidation of two or more corporations into one creates a new company and works a dissolution of the original corporations forming the consolidated company, is subject to exceptions, and depends upon the statute under which the consolidation is effected.

4. SAME—*two may be consolidated under name of one of them.* One corporation may, under the acts of June 30, 1885, and March 26, 1872, be consolidated with another under the name of the latter, which is continued in existence with enlarged powers, franchises and property rights.

5. SAME—*liability of consolidated company for judgment rendered after consolidation.* A consolidated railroad company is not relieved from liability upon a judgment rendered against one of its constituent corporations after the consolidation, upon a cause of action accruing before the consolidation, under the acts of March 26, 1872, and June 30, 1885, on the ground that the original liability is merged in the judgment, which is a new debt accruing after consolidation.[*]

*C., S. F. & C. Ry. Co.* v. *Ashling,* 56 Ill. App. 327, affirmed.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of LaSalle county; the Hon. CHARLES BLANCHARD, Judge, presiding.

EDGAR A. BANCROFT, and REEVES & BOYS, for plaintiff in error:

No statutory consolidation of the two corporations was attempted or made. The Santa Fe company merely bought the railroad and appurtenances of the St. Louis company, and the corporate life and character of each remained intact. 1 Starr & Curtis, chap. 32, pars. 50-58; 3 Starr & Curtis, chap. 114, par. 211.

In statutory proceedings the statute must be substantially complied with. Every act required which is jurisdictional, or of the essence of the proceedings, or prescribed for the benefit of the party to be affected

---

[*]The liability of a consolidated railroad company for debts of a predecessor is considered at length in a note to *Chicago and Indiana Coal Railway Co.* v. *Hall,* (Ind.) 23 L. R. A. 231.

thereby, must be done. The requirement is mandatory. *Railroad Co.* v. *Shirley*, 54 Tex. 125; *Smith* v. *Railroad Co.* 18 Wis. 1; 1 Rorer on Railways, 91; Sutherland on Statutory Const. sec. 456; *Sapplington* v. *Railroad Co.* 37 Ark. 23.

The cause of action against the St. Louis company was merged in the judgment, lost its vitality and expended its force and effect. Black on Judgments, sec. 674; *Ries* v. *Rowan*, 11 Fed. Rep. 657; *Schuler* v. *Israel*, 27 id. 851; *Runnamaker* v. *Cordray*, 54 Ill. 303.

The liability of the Santa Fe company could not be affected, either in its form or character, by any litigation to which it was not a party. That liability, if any existed, became complete and perfect at the time of the consolidation. Plaintiff in error was entitled to litigate that claim, which could not be transformed into a judgment until it was regularly brought into court. *Prouty* v. *Railroad Co.* 52 N. Y. 363; *Railroad Co.* v. *Hardin*, 40 Ga. 707; *Railroad Co.* v. *Murphy*, 46 Tex. 356.

Though the cause of action may have arisen from a tort, the judgment is not, therefore, any the less a contract or in the nature of a contract. The tort merges in the judgment. 1 Freeman on Judgments, sec. 217.

Charles Wheaton, Samuel Richolson, and William L. Seeley, for defendant in error.

Mr. Justice Carter delivered the opinion of the court:

Defendant in error, Mary L. Ashling, as administratrix of the estate of Edward W. Ashling, deceased, brought suit in the circuit court of LaSalle county, on the 6th day of June, 1886, against the Chicago and St. Louis Railway Company, to recover damages for the alleged negligent killing of said Edward by the explosion of a boiler of an engine of said company. A trial was had May 7, 1891, resulting in a judgment for the plaintiff for $5000 and costs. Afterward, in January, 1893, said administratrix brought this her action of debt in the same court against plaintiff in error, the Chicago, Santa Fe and California

Railway Company, to recover the amount of said judgment, interest and costs, on the alleged ground that the St. Louis company had become consolidated with the Santa Fe company.    Before the judgment against the St. Louis company was rendered, but while the suit was pending, and on December 15, 1886, the alleged consolidation took place.  The declaration contained two counts, alleging the recovery of the judgment against the St. Louis company,, and the consolidation, under the statutes of this State, of said company with the Santa Fe company, under the name of the latter, after suit brought but before the judgment; that the cause of action upon which the judgment was rendered accrued against and was a liability of the St. Louis company prior to such consolidation, and that by reason of such consolidation the Santa Fe company became liable to pay the debts and liabilities of the St. Louis company and to pay the judgment aforesaid.   The counts do not materially differ, both alleging a consolidation under the statute, but the first alleges that the liability of the Santa Fe company arose under the statute, while the second does not.   The defendant below pleaded *nil debet* and a special plea denying the consolidation.   Issues were made and the cause was tried before the court without a jury, and judgment was rendered for plaintiff below for the amount of the first named judgment, interest and costs.  The Appellate Court having affirmed the judgment, this writ of error is prosecuted by the Santa Fe company.

There is no controversy of fact to be here considered, and the only questions we deem it important to discuss are, whether or not the St. Louis company was consolidated with the Santa Fe company, and if it was, what was the effect of the judgment rendered against that company after the consolidation.  Plaintiff in error insists the transaction was not a consolidation, but only a purchase by and sale to it of all the property, rights and franchises of the St. Louis company, under an act of the

legislature entitled "An act to increase the powers of railroad corporations," approved June 30, 1885, which contains the following provisions: "That all railroad companies now organized or hereafter ·to be organized under the laws of this State, which now are or hereafter may be in possession of and operating, in connection with or extension of their own railway lines, any other railroad or railroads in this State or in any other State or States, or owning and operating a railroad which connects, at the boundary line of this State, with a railroad in another State, are hereby authorized and empowered to purchase and hold, in fee simple or otherwise, and to use and enjoy, the railway property, corporate rights and franchises of the company or companies owning such other road or roads, upon such terms and conditions as may be agreed upon between the directors and approved by the stockholders owning not less than two-thirds in amount of the capital stock of the respective corporations becoming parties to such purchase and sale. Such approval may be given at any annual or special meeting, upon sixty days' notice being given to all shareholders of the question to be acted on, by publication in some newspaper published in the county where the principal business office of the corporation is situated : *Provided,* that notice of any special meeting called to act upon such question shall be given to each shareholder whose post-office address is known, by depositing in the post-office, at least thirty days before the time appointed for such meeting, a notice properly addressed and stamped, signed by the secretary of the company, stating the time, place and object of such meeting: *And provided further*, that no railroad corporation shall be permitted to purchase any railroad which is a parallel or competing line with any line owned or operated by such corporation." It further provided that nothing contained in the act shall "be so construed as to in any manner relieve or discharge any railroad company organized under the laws of this State

from the duties or obligations imposed by virtue of any statute now in force or hereafter enacted."

At the time of the alleged consolidation there was no act in force authorizing the transaction, whether treated as a purchase and sale or as a consolidation, except said act of 1885 and the act of March 26, 1872, making provision for changing the names, etc., and providing for the consolidation of incorporated companies. Sections 7 and 8 of the latter act are as follows:

"Sec. 7. Such change of name, place of business, increase or decrease of capital stock, increase or decrease of number of directors, managers or trustees, or consolidation of one corporation with another, shall not affect suits pending in which such corporation or corporations shall be parties; nor shall such changes affect causes of action, nor the rights of persons in any particular; nor shall suits brought against such corporation by its former name be abated for that cause.

"Sec. 8. Whenever any railroad corporation shall desire to consolidate with any other railroad corporation by virtue of the provisions of this act, a notice, as provided by section 2 of this act, shall be given at least sixty days before the time fixed for such meeting, and a general notice, as provided by said section 2, shall be published for nine successive weeks: *Provided,* that railroad corporations shall not consolidate their stock, property or franchises with any other railroad corporation owning a parallel or competing line." 1 Starr & Cur. Ann. Stat. p. 626.

The act creating the statutory liability is entitled "An act in relation to the consolidation of incorporated companies," and was passed and came in force in 1867, and is as follows: "In all cases when any company or corporation, chartered or organized under the laws of this State, shall consolidate its property, stock or franchises with any other company or companies, such consolidated company shall be liable for all debts or liabilities of each

company included in said consolidated company, existing or accrued prior to such consolidation, and actions may be brought and maintained, and recovery had therefor, against such consolidated company." 1 Starr & Cur. Ann. Stat. p. 627.

It is contended by plaintiff in error that the transaction is sufficiently shown to have been a purchase and sale, and not a consolidation, by the deed of conveyance of the St. Louis company and by the resolutions adopted by the respective boards of directors and meetings of the stockholders of the two companies, and also by the fact that no certificate of consolidation was filed in the offices of the Secretary of State and recorder of deeds, as required by the act of 1872, and that the notices required by the act of 1885, and not by the act of 1872, were given, —no attempt having been made, it is said, to comply with the requirements of the act of 1872. The record does show that the proceedings of the two corporations were had under the act of 1885, rather than under the act of 1872. The resolutions in question fully authorized the purchase by the Santa Fe company, and the sale by the St. Louis company, of all the property, effects, assets, corporate rights and franchises, of every kind, of the latter company, and the deed of conveyance fully evidenced the transaction. It must, however, be conceded that if what is authorized to be done under the act of 1885 would amount to a consolidation of the lessor with the lessee corporation, it was competent for the legislature to prescribe steps, not unconstitutional, to be taken to effect such consolidation different from those prescribed by the act of 1872. Besides, as all the stockholders were present at the meetings it would seem to be immaterial whether the proper notices were given or not. (*Thomas* v. *Citizens' Horse Railway Co.* 104 Ill. 462.) Then, again, this is not a direct proceeding to test the right of the Santa Fe company to hold the franchises and property of the St. Louis company and to assert its corporate rights

and franchises, and if the effect of what has transpired between the two companies amounts to a consolidation of the St. Louis company with the Santa Fe company, the latter cannot, in this proceeding, be heard to say that it did not comply with the requirements of the statute, but it is estopped therefrom.   It is true, that what was done must be considered in order to determine whether there was a consolidation or not;  but we must look to the results accomplished, rather than to the means, steps or procedure by which those results have been attained.

But if it should be held that a purchase and sale might have been made under the act of 1885, so as not to amount to a consolidation of the property, stock or franchises of the St. Louis company with that of the Santa Fe company, there was in this case one very important element of the transaction which would go far toward stamping the transaction as one of consolidation.   The resolutions and deed of conveyance provided that in addition to the consideration of one dollar to be paid by the Santa Fe company and the assumption and payment of the bonded indebtedness of the St. Louis company, the Santa Fe company should issue its stock to the stockholders of the St. Louis company, dollar for dollar, in exchange for their stock in the latter company.   The effect of this part of the transaction was to incorporate in the Santa Fe company the stockholders of the St. Louis company, combining all the stockholders of each company in one. This was an act of consolidation, and not by any means necessary to a mere purchase and sale.   If the transaction could be distinguished from a consolidation as a mere purchase and sale, to be regarded as a fair one (and it should be so regarded for the purpose of the argument) the St. Louis company itself, and not its individual stockholders, should have received all the consideration for the property conveyed, so that it would have the equivalent of the property sold with which to meet the obligations and liabilities which it had created or incurred.   True,

this is not a creditor's bill to reach assets improperly diverted or to set aside an alleged fraudulent sale, and no question is raised as to the good faith of the transaction, but we must consider all the elements of the transaction in order to determine whether there was a consolidation or not.  By the transaction the St. Louis company was left without property, corporate rights or franchises of any kind, and without stockholders.  All of these were transferred bodily to the Santa Fe company, and became united, respectively, with the property, rights, franchises and stockholders of the latter company.  Why was this not a consolidation of the St. Louis company with the Santa Fe company?  There is no magic in words.  Merely calling the transaction a purchase and sale would not prevent it from being a consolidation.  It cannot be supposed, from the nature of this transaction, that it was expected that the St. Louis company should continue its active corporate existence after divesting itself of all its property, corporate rights and franchises and stockholders.  The statute expressly provides that the consolidation of one corporation with another shall not affect suits pending, and the act of 1885 provides that it shall not be so construed "as to in any manner relieve or discharge any railroad company organized under the laws of this State from the duties or obligations imposed by virtue of any statute now in force or hereafter enacted." Without undertaking to determine, in this connection, the precise meaning of these qualifying provisions, they may, we think, be regarded as expressions of the legislative intention not to release such corporations from any duty or obligation already imposed by the statute, nor to provide a way by which such duties or obligations may be evaded.  It is, we think, apparent, that while it was intended to give railroad corporations so situated enlarged powers, it was not intended to diminish their responsibilities or liabilities, nor to take away from those dealing with them such security and safety as the law

already provided.    To hold otherwise would be to impute
to the State an intention to provide by one law the means
whereby its citizens may obtain redress for injuries re-
ceived at the hands of corporations created by it, and
then by another law the means whereby such law can be
evaded.    No such construction should be given to the
statutes in question unless clearly necessary from the
language used.    That the St. Louis company may, under
the statute, have been kept alive for certain purposes
does not materially affect the question.

The general rule that the consolidation of two or more
corporations into one creates a new company and works
a dissolution of the original corporations forming the
consolidated company is subject to exceptions, and de-
pends upon the statute under which the consolidation is
effected.    In *Central Railroad, etc. Co.* v. *Georgia*, 92 U. S.
665, it was said :    "It may be that the consolidation of
two corporations,—or amalgamation, as it is called in
England,—if full and complete, may work a dissolution
of them both, and its effect may be the creation of a new
corporation.    Whether such be the effect or not must
depend upon the statute under which the consolidation
takes place and of the intention therein manifested."
We see no reason why, under the statutes in question,
one corporation may not be consolidated with another
under the name of such other, which is continued in
existence with enlarged powers, franchises and property
rights.    It is, in substance, so provided, and such con-
solidations are frequently made.    (*Central Railroad, etc.
Co.* v. *Georgia, supra; Racine and Mississippi Railroad Co.* v.
*Farmers' Loan and Trust Co.* 49 Ill. 331; *Eaton and H. Rail-
road Co.* v. *Hunt*, 20 Ind. 457 ; 4 Am. & Eng. Ency. of Law,
272 *i*; *Meyer* v. *Johnston*, 64 Ala. 656.)    In the latter case it
was said: "When the rights, franchises and effects of two
or more corporations are, by legal authority and agree-
ment of the parties, combined and united into one whole,
and committed to a single corporation, the stockholders

of which are composed of those (so far as they choose to become such) of the companies thus agreeing, this is, in law and according to a common understanding, a consolidation of such companies, whether such single corporation, called the consolidated company, be a new one then created or one of the original companies continuing in existence, with only larger rights, capacities and property." We concur in this view as a general statement of the law, subject, however, to modification by the statutes under which the consolidation is effected.

What was said in *People ex rel.* v. *Louisville and Nashville Railroad Co.* 120 Ill. 48, and *Ohio and Mississippi Railway Co.* v. *People ex rel.* 123 id. 467, to the effect that by the consolidation the original companies ceased to exist and a new one was formed, was said not with reference to the statutes here in question, but in reference to other statutes under which the consolidations there considered were effected.

We are of the opinion that as the question is here presented it must be held that there was a consolidation of the Chicago and St. Louis Company with the Chicago, Santa Fe and California Company, as alleged in the declaration.

It is next insisted by plaintiff in error, that as the judgment sued on in this case was rendered after the consolidation it cannot be held to be a liability of the St. Louis company existing at or accrued prior to such consolidation, within the meaning of the statute creating the liability. Counsel refer to the well-known rule that the original liability or cause of action is merged in the judgment, and say that in this case the judgment must be regarded as a new debt or liability which accrued when the judgment was rendered,—that is, after the consolidation took place,—and that the statute creating the liability does not make the consolidated company liable for causes of action accruing against its constituent members after the consolidation. The case of *Boynton* v.

*Ball,* 105 Ill. 627, and other cases, are cited by counsel as practically decisive of the question. The point decided by these cases relevant to this discussion amounts to but little more than a re-statement of the general rule above mentioned, that the judgment is a new debt or liability into which the original cause of action has been merged. There would be much force in the contention of counsel, from a technical point of view, in determining the question raised in the case at bar, were it not for other statutory provisions which it is equally the duty of the courts to enforce. By section 7 of the act of 1872, above set out, the consolidation "shall not affect suits pending," "nor causes of action, nor the rights of persons, in any particular," and suits previously brought shall not be abated; and by the act of 1885 nothing in it shall "be so construed as to in any manner relieve or discharge any railroad company  *  *  *  from the duties or obligations imposed by virtue of any statute" in force. These provisions of the statute would be nullified if the rule contended for should be applied in such a case as this. Under the statute a suit pending at the time of consolidation may proceed to final judgment as brought, without any change of parties whatever, and the rights of the parties will not be affected, in any particular, by the consolidation. The statute must be construed as preserving the identity of the cause of action in the judgment, so that it will not be necessary to re-litigate the original cause of action with the consolidated company, but the judgment will be regarded as conclusive evidence of the original liability rather than of a new debt or liability, and nothing more will be needed to fix the liability of the consolidated company than to establish the fact of consolidation. The statute must be given effect in such a case rather than a technical rule, however well understood and generally applied. Giving the statute its proper force we can see no difference between the effect of a judgment recovered before consolidation, and

one recovered afterward in a case pending at the time of consolidation. The Santa Fe company came in as a volunteer and absorbed all the property, rights, franchises, stock and stockholders of the St. Louis company while the suit was pending, and, as held by the Appellate Court, should be treated, under the statute, as having acquired rights *pendente lite.*

The propositions of law held by the trial court being substantially in harmony with our view of the law as above stated, and the cause having been correctly decided, we see no occasion for reviewing these propositions here.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. Chief Justice Craig: I do not concur in this judgment. In my opinion the transaction between the two railroad companies was a sale—not a consolidation.